**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHRISTOPHER S. ARBISI,**

        **Plaintiff,**

**v.**                              **Case No. 8:14-cv-1909-T-33TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff seeks judicial review of the denial of his claim for Social Security disability

benefits.  Because the decision of the Commissioner of the United States Social Security

Administration is in accordance with the correct legal standards and is otherwise supported by

substantial evidence, I recommend that it be affirmed.

**A.**

      Plaintiff applied for disability benefits in July 2009, alleging disability as of May 28,

2009, by reason of panic attack disorder, bipolar condition, back injury/lumbar surgery, and

irritable bowel syndrome.  (R. 245-51, 271).  Plaintiff's application was denied originally and

on reconsideration.  There followed a *de novo* hearing before an Administrative Law Judge

(hereinafter "ALJ") in February 2011.[1]  (R. 65-84).  Apparently, because of an incomplete audio recording of that hearing, the Appeals Council remanded the case for a new hearing. (R. 110-11).

The administrative hearing on remand was conducted February 19, 2013.  (R. 37-64). Plaintiff was forty-four years of age at the time of his administrative hearing, was represented at the hearing by counsel, and testified in his own behalf.  He stands 6 feet 3 inches tall and weighed 180 pounds.  Plaintiff has a GED and reported past relevant work as an A/C tech, installer, mechanic, and alarm company tech.  At the outset, Plaintiff indicated that he was injured in about March 2009 and put on medical leave.  He had low-back surgery in 2002 and went back to that doctor, Dr. Tolli, in 2009.  He was told he had two blown discs in his neck. He was having weakness and numbness in his right arm.  Dr. Tolli recommended surgery but Plaintiff wasn't keen on that.  He testified that was given a five pound lifting restriction that was never lifted.  He treated his neck pain through Dr. Samlaska, who did facet blocks.  He

---

[1]At this hearing, Plaintiff testified that he had not worked since May 28, 2009.  He was terminated for insubordination, but claimed the real reason was an on-the-job injury in February 2009.  In July 2009, he was told he had two ruptured discs in the neck.  Surgery was suggested, but he had no insurance.  He was restricted to lifting five pounds after the injury. He had facet blocks and he took prescription medication.  He lies down most of the day, reads, and watches television.  His legs go numb and it's painful.  He stands when he has to. Walking more than a block is a problem.  He cannot lift a gallon of milk repeatedly because his hands go numb and the back of his arm hurts.  He suffers bipolar disorder, anxiety disorder, agoraphobia, and depression.  He takes hydrocodone, lithium, Xanax, and Seroquel when he can afford it.  He has problems keeping things straight and with memory and concentration.  He does not leave the house unless he has to, and he does not socialize much. He constantly worries and has lost his appetite and his energy level.  He cannot sleep.  He cooks one simple meal a day and cleans his living area on the boat.  He occasionally goes grocery shopping.  Prior to 2009, he had a lumbar laminectomy.  (R. 68-80).

2

can't afford her care anymore.  He now takes Motrin for the pain.  He also tore his right rotator cuff a year or so previous to the hearing.

He treated his anxiety and depression with Dr. Gimeno for about twenty years.  When he passed away, Plaintiff started seeing psychiatrist Dr. Corso.  He prescribes lithium for the bipolar condition, Xanax for the anxiety, and trazadone to help with sleep.  The medications make him groggy.  He is very forgetful.  He has anxiety daily and panic attacks weekly.  The panic attacks last for about fifteen minutes up to three hours.  He takes a nap after an attack.  He has problems with being around people and with crowds, grocery stores, malls, and things of that nature.  He also has daily problems focusing and with concentration.  His energy level is nonexistent and he is not interested in doing anything.  He feels guilty and worthless.

He can sit comfortably for thirty minutes and then his legs go numb.  He can stand for about thirty minutes.  He has problems walking a long distance.  He gets low-back pain when bending and stooping.  He still lies down or reclines about sixty to seventy percent of the day.  He uses a heating pad every day.  The weakness and numbness in his right arm and hand is getting worse.  He drops things.  He is left-handed.  He fixes his own meals and does his laundry.  He can drive for about forty-five minutes.  He no longer lived on a boat.  (R. 40-56).

Scott Brown, a vocational expert ("VE"), testified next.  After classifying Plaintiff's past medium exertional work, he testified on a hypothetical question assuming a person of Plaintiff's age, education, and work experience, capable of light exertional work, with occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent reaching, handling, fingering, or feeling with the right upper extremity; but limited to simple, routine, repetitive tasks, with ordinary or routine changes in the work settings or duties; but

only occasional interactions with the public, coworkers, or supervisors; and able to maintain attention and concentration for two hours but then requires a ten minute break.  According to the VE, with such limitations, a person could not do Plaintiff's past work, but could perform other jobs such as cleaner/housekeeper, folder, and mail clerk.  If further limited to lifting only five pounds, those jobs would not be available, but work as an addresser and document preparer and eyeglass frame polisher would be.  If Plaintiff's testimony was fully credited, no jobs would be available.  If such person had a GAF of 40, he would not likely function well in a vocational setting.  (R. 56-63).

Also before the ALJ were medical records outlining the Plaintiff's medical history. Those matters are addressed herein as necessary.

By his decision of March 13, 2013, the ALJ determined that while Plaintiff had severe impairments during the period under review related to degenerative disc disease, cervical radiculopathy, irritable bowel syndrome ("IBS"), mood disorder, bipolar disorder, and anxiety, he nonetheless had the residual functional capacity to perform a limited range of light exertional work.  (R. 22-28).  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  (R. 29-30).  On this conclusion, Plaintiff was determined to be not disabled.  (R. 30).  The Appeals Council denied Plaintiff's request for review (R. 1-6), and the ALJ's decision became the final decision of the Commissioner.

**B.**

Entitlement to Social Security disability benefits requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

Plaintiff demands a remand and reversal with an immediate award of benefits because: (1) the ALJ failed to recognize all impairments; (2) the ALJ failed to state the weight afforded some doctors and he gave improper weight to other doctors; (3) the ALJ gave an incomplete hypothet (sic); (4) the ALJ failed to utilize SSR 96-8p; and (5) the ALJ failed to properly utilize the Eleventh Circuit pain standard. (Doc. 13). In general response, the Commissioner urges that a review of the medical and other record reveals that the decision is supported by substantial evidence. (Doc. 15).

Significant to this decision, Plaintiff's date last insured for disability benefits was December 31, 2009. Thus, he was obliged to prove his disability existed prior to this date. *Ware v. Schweiker*, 651 F.2d 408, 411 n.3 (5th Cir., Unit A, 1981); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Given an alleged onset date of May 28, 2009, the period at issue is quite narrow.

By his first claim, Plaintiff argues that, in addition to the severe impairments found by the ALJ (R. 22), a report by Dr. Gimeno found migraine headaches and panic attacks; a note

6

by Dr. Tolli diagnosed him with numbness and tingling in the right arm and hand and such

was confirmed by Dr. Samlaska's records; and Dr Tolli limited Plaintiff to lifting no more

than five pounds; all of which reflect impairment of lack of bilateral manual dexterity.  He

urges that, at a minimum, the case should be remanded for full consideration of all his

impairments.  (Doc. 13 at 1-4).

In response, the Commissioner initially notes that Plaintiff claimed only panic attack

disorder, bipolar disorder, lumbar surgery, and IBS as disabling impairments and she urges

that the ALJ need not address conditions a claimant has not alleged disabling.  In any event,

she asserts there is no reversible error at step two of the sequential evaluation process because

the ALJ credited Plaintiff with severe impairments at that step.  Moreover, the ALJ

considered the combined effects of Plaintiff's impairments at the remaining steps of the

evaluation process, and the record does not support Plaintiff's claim of additional severe

impairments.  (Doc. 15 at 5-7).

After a thorough review of the medical and other evidence, I find no error requiring a

remand on Plaintiff's first claim.  Initially, regarding the migraine headaches mentioned by

Dr. Gimeno, I note that while Plaintiff's administrative filings suggest migraine headaches,

Plaintiff did not mention the condition at either of the administrative hearings, nor does he

cite any medical support for the condition apart from the diagnosis stated by Dr. Gimeno.

The Commissioner is also correct that Plaintiff here demonstrates no error requiring reversal

at step two of the five step sequential evaluation process dictated by the Regulations.[2]  At step

two, the ALJ is called upon to determine whether a claimant's impairments are severe.  20

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  In application, this inquiry is a "threshold"

inquiry.  It allows only claims based on the slightest abnormality to be rejected.  *Brady v.*

*Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  An impairment is not severe if it does not

significantly limit a claimant's physical or mental ability to do basic work activities.[3]  20

C.F.R. §§ 404.1521(a); 416.921(a).  At step two, "the finding of any severe impairment,

whether or not it qualifies as a disability and whether or not it results from a single severe

impairment or a combination of impairments that together qualify as severe, is enough to

satisfy the requirement of step two."  *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir.

---

[2]The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  Under this five-step sequential evaluation, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.  *Id*. at §§ 404.1520(a)(4), 416.920(a)(4).  The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step.  *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

[3]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).  Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment.  *Id.*

1987).  Thus, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment: and that finding is all that step two requires."  *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x. 823, 824-25 (11th Cir. 2010).  As the decision reflects, the ALJ here credited Plaintiff with a number of physical and mental impairments at step two; the ALJ need not do more.  Thus, there is no error requiring reversal at that step.

Moreover, Plaintiff's severity claims are not borne out by a review of the medical record.  While it is correct that Dr. Gimeno's two-page recap of Plaintiff's care reflected an DSM IV - Axis III diagnosis for migraine headaches,[4] the doctor provided no treatment notes nor comments to support the severity of the condition.  (R. 394-95).  Indeed, there are no treatment notes from this long-time treating psychiatrist and, significantly, the balance of the treating and examining records offer no support for the claim of severe migraine headaches either.

The severity of a medically ascertained impairment is measured in terms of its effect upon a claimant's ability to work and not simply in terms of "a deviation from purely medical standards of bodily perfection or normality."  *Wind v. Barnhart,* 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Stated otherwise, the mere diagnosis of a condition is not enough to reveal a severe impairment.

---

[4]While the decision reflects the ALJ's recognition that Plaintiff claimed to suffer migraine headaches (R. 26), as the Commissioner notes, Plaintiff did not claim he was disabled by migraine headaches and there is no record to support such a claim in any event.

Both Dr. Tolli, his orthopedic doctor, and Dr. Samlaska, Plaintiff's pain management doctor, noted symptoms for right arm numbness and tingling in three fingers of the right hand after a reported on-the-job injury from carrying a heavy ladder. (R. 453, 461, 502)[5] However, a fair review of the decision reveals the ALJ recognized Plaintiff's complaints of radiating pain in the right shoulder and arm with numbness in the right hand and fingers and that he credited Plaintiff with severe cervical radiculopathy and degenerative disc disease. More importantly, the ALJ credited Plaintiff with limitations from the conditions and Plaintiff does not reveal functional limitations beyond those credited by the ALJ. His claim on appeal that the records for Drs. Tolli and Samlaska reveal an additional impairment related to severe bilateral manual dexterity is not at all supported by any records from these or any other doctor. On the contrary, the reports from Dr. Tolli from March 2009 suggest no significant bilateral dexterity issues. For instance, in a March 3, 2009, report, Dr. Tolli noted the complaint of numbness and tingling, but his physical examination revealed 5/5 motor strength in both arms, hands and legs, with no focal deficits; and 5/5 finger flexion, extension, abduction, and adduction, with 5/5 grip. (R. 460-61). Following a cervical MRI (R. 463), which revealed degeneration and disc herniation at C6-7, the physical exam revealed 5/5 motor strength and a sensory decrease in the first three fingers on the right hand, but no other significant limitation in grasping or fingering. By Dr. Tolli's recommendation, pain management was in order and a cervical epidural injection and pain management were recommended. (R. 461).

---

[5]Counsel urges that Plaintiff is right-hand dominant, but according to his testimony, he is left-handed. (R. 41, 69).

Plaintiff's claim that Dr. Tolli gave Plaintiff a permanent five pound lifting limitation is disingenuous at best.  On March 10, 2009, the doctor okayed Plaintiff for return to light duty work with a lifting limit of five pounds "until next office visit," noted to be the following week.  (R. 472).  Thereafter, Plaintiff participated in pain management with Dr. Samlaska.  I find no other notes from Dr. Tolli.  In any event, the ALJ found the claim of a permanent restriction for lifting five pounds was neither ordered nor supported by the record as a whole or Plaintiff's work history.[6]  And, upon my review of the record, I find this conclusion fully supported.

The records from Dr. Samlaska between March and December 2009 reveal that Plaintiff reported that he responded well to the epidural steroid injections and was stable on his medications.  Two cervical steroid injections were reported to be successful.  Office notes from Dr. Samlaska reflect only limited physical findings, with indications of some limited range of motion in the neck but notations for 5/5 strength findings on the right, with intact sensation.  (*See* R. 453-59, 499-505).  The claim of an additional bilateral dexterity impairment is not demonstrated.

In sum, Plaintiff demonstrates no reversible error at step two and, significantly, he fails to demonstrate that the ALJ overlooked any limitation arising from any impairment not considered by the ALJ.

By his second claim, Plaintiff complains that the ALJ made no mention of Dr. Samlaska, his treating pain specialist during the pertinent period in 2009, nor did he assign

---

[6]As the testimony of the VE reveals, even with this limitation, Plaintiff could perform jobs available in the national economy.  (R. 60).

11

weight to her opinions. Again, Dr. Samlaska found tingling and numbness in three of Plaintiff's fingers and muscle spasms and weakness in April 2009, prior to his date last insured. And, Plaintiff states the ALJ failed to properly refute such. As for the opinion of Dr. Gimeno, Plaintiff argues the ALJ's analysis is deficient because the ALJ improperly refuted the same by addressing opinions from a time period not at issue; by citing a history of alcohol abuse; and by relying on an opinion by a one-time examining psychologist, Dr. Appenfeldt, to discount the doctor's opinion. Moreover, the ALJ did not discuss the weight given to Dr. Gimeno's statement in October 2009 assessing Plaintiff with a GAF score of 40. Such score is indicative of a person who cannot work and who is disabled. Given the failure to address the GAF, he claims the decision should be reversed for an award of benefits. (Doc. 13 at 4-8).

In response the Commissioner notes that, contrary to Plaintiff's claim that the ALJ did not mention Dr. Samlaska, the ALJ expressly discussed her findings on examination. Moreover, Plaintiff fails to identify any opinion of the doctor that the ALJ failed to address. As for Dr. Gimeno, his opinion that Plaintiff was totally and permanently disabled is an issue reserved for the Commissioner. And, the balance of the doctor's statement was an out-dated list of incidents and diagnoses without any explanation of the limitations such would impose. As for the GAF score of 40, the Commissioner has declined to endorse the GAF scores for use in the disability programs. The score does not necessarily reveal particular limitations and is not an assessment of a claimant's ability to work, she argues. (Doc. 15 at 13-18).

While Dr. Samlaska is not mentioned by name, the decision reflects the ALJ's consideration of her pain management records at Exhibits 15F, 18F, and 19F. (*See* R. 26-27). And, contrary to Plaintiff's claim, the ALJ expressly referenced the radiating pain from the

right shoulder with resulting tingling and numbness in the right hand and three of his fingers.

The ALJ also noted that physical exam revealed a decreased range of motion in the neck, and

decreased sensation in some of the right fingers and forearm.  Moreover, the ALJ also noted

Plaintiff's concession – reflected in Dr. Samlaska's notes – that medications, injections, ice,

and heat decreases his pain.  And, citing Dr Tolli's findings of 5/5 strength in the arms and

hands, the ALJ concluded that he had factored the neck and back pain into his residual

functional capacity.  In sum, the claim that the ALJ ignored this doctor's records is simply

wrong.

And, as the Commissioner notes, the Plaintiff fails to identify any opinion (or finding)

by this doctor that the ALJ ignored.  I conclude that it is fairly inferred from the ALJ's

discussion of Drs. Tolli and Samlaska's records that any claim of disabling limitations in the

right arm and hand were discounted by the ALJ.  And, significantly, Plaintiff demonstrates no

findings of limitations related to his cervical radiculopathy not fairly accounted for by the

ALJ.  In sum, there is no support for the claim that the ALJ ignored Dr. Samlaska's records

and findings.

As for the former treating psychiatrist Dr Gimeno,[7] I cannot agree that the ALJ's

rejection of the doctor's conclusion that Plaintiff was disabled was "deficient" or that the ALJ

---

[7]Dr. Gimeno penned a two-page letter indicating he had treated Plaintiff periodically since 1991.  (R. 394-95).  He noted Plaintiff's "very erratic clinical course," the fact that he had held many jobs but would quit or be fired because of his temper, irritability, moodiness, depression, and severe panic attacks.  He expressed his opinion that Plaintiff "is totally and permanently disabled" but "competent to handle his own money."  (R. 395).  By his DSM IV Diagnosis, Plaintiff suffered bipolar disorder, anxiety attacks, episodic binge drinking, with chronic back pain, migraine headaches and gastritis.  He assessed a "GAF 40. Estimated to have been 65 in the past year to 18 months."  (*Id.*).

mishandled the notation for a GAF score of 40.  In addressing Dr. Gimeno's letter, the ALJ

stated the following:

> Turning to the claimant's mental impairments, as noted above the claimant's mental impairments are only moderate. Although the claimant's long-term medical provider, Dr. Gimeno, M.D., submitted a statement that in his opinion the claimant was disabled (see exhibit 5F*)*, the undersigned is not persuaded by it for the fo1lowing reasons. The statement indicates the doctor told the claimant in 1993 that he  should apply for disability. The record, however, indicates that the claimant was able to work at substantial gainful activity level for some time after this pronouncement --- disproving the doctor's speculation. It may be that the doctor was unfamiliar with the agency's definition of disability because the statement notes the doctor told the claimant to apply for disability because "his condition was serious and he would need to be on medication for the rest of his life." This is not the agency definition of a mental disability. In addition, the doctor's statement is unsupported by any treatment notes. The statement is only the doctor's recollection of the times the claimant met the doctor --- typically about once or twice a year. (See Exhibit 5F). The doctor noted the claimant had an extensive history of alcohol abuse, and that the doctor told the claimant to completely abstain from alcohol. The undersigned notes the claimant continues to drink. This suggests his depression and anxiety might not be as severe as he alleges.  Dr. Gimeno's opinion is also inconsistent with the results of the independent mental health consultative examination.
>
> The undersigned has considered the claimant's GAF score --- as specifically requested to do so by the claimant's representative. (See Exhibit 21 F). The reader is reminded that the Commissioner has specifically declined to endorse the GAF scale for use in disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50, 746-50, 764-65 (August 21, 2000). In that regard, the claimant's GAF scores are given little weight. This is even more so because the GAF score is from Dr. Gimeno — whose opinion has already been discussed.

(R. 27).

In addition, the ALJ cited the inconsistent findings of a consulting psychologist, Linda Appenfeldt, and of the reviewing, nonexamining doctors Nancy Dinwoodie, M.D., and Martha Putney, Ph.D., as well as other evidence  (R. 28).

In this Circuit, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997)).  Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

As noted above, Dr. Gimeno gave his opinion in an October 2009 letter that Plaintiff was totally and permanently disabled.  Contrary to any suggestion otherwise by Plaintiff, the ALJ was not required to give this permanent disability opinion any particular deference.  Under the applicable standard, the ALJ is not obliged to give deference to a treating doctor's opinion that the claimant was disabled because a treating source's opinion that a claimant is unable to work is not a "medical opinion" as defined by the Regulations, but an opinion on an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Moreover, as explained by the ALJ in this matter, it is unclear just what disability standard the doctor was applying to his opinion but clearly it was not that applicable to this disability claim.  (R. 27).  In any event, as the ALJ noted, the doctor's statements are unsupported by any treatment notes.  (*Id.*).  These reasons alone offer good cause for discounting the opinions of this doctor.

While Plaintiff objects that the ALJ cited comments about a time not under consideration on this claim, the ALJ can hardly be faulted for doing so given that Dr. Gimeno's statement specifically addressed the early days of his treatment.  The ALJ's reference to Plaintiff's continued drinking was not wholly irrelevant nor was consideration of his history of alcohol abuse improper in light of the doctor's early advice (in 1994) that Plaintiff abstain from alcohol.  Moreover, the ALJ accurately reported that Dr. Gimeno's opinion was inconsistent with the results of the independent mental consultative examination by Dr. Appenfeldt in November 2009.  (R. 28).  The reference to and reliance on this examiner's opinion was not improper where the ALJ had properly discounted the treating doctor's opinion.

As noted above, the ALJ may discount the medical opinions of even a treating doctor by articulating good cause for doing so.  Here, Dr. Gimeno's statement was conclusory and unsupported by medical records and I conclude that the ALJ has articulated adequate good cause for discounting the doctor's opinion that Plaintiff was disabled and could not work.

As for the GAF score of 40,[8] even assuming that such score is appropriate for

consideration on these disability claims, I find this score adequately discounted by the ALJ.

While Plaintiff urges that a GAF score of 40 indicates that he cannot work, case law in this

Circuit holds that a low GAF score does not require a finding of disability.  *Wind v. Barnhart*,

133 F. App'x 684, 692 n.5 (11th Cir. 2005) (recognizing that the Commissioner has declined

to endorse the use of GAF scores in disability determinations.); *Seymore v. Apfel*, 131 F.3d

152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a

GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a

job; thus, standing alone without further narrative explanation, the rating of 45 does not

evidence an impairment seriously interfering with claimant's ability to work."); *accord Cox v.*

*Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000).  Nor does a low

GAF score translate into specific mental functional limitations or constitute an assessment of

a claimant's ability to work.  *See Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL

1994978, at *3 (M.D. Fla. May 8, 2008).

---

[8]Global Assessment of Functioning ("GAF") is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 61-70 indicates that either some mild depressive symptoms are present or that difficulty in social or occupational functioning exists, a GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), and a GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  *Id.*  A GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.  *Id.*

As the ALJ expressly noted, the Commissioner has declined to endorse the GAF scale for use in Social Security disability programs because it lacks a direct correlation to the severity requirements of the mental disorders listings.  (R. 27).  As suggested above, the Commissioner's decision in this regard has been accorded deference by a number of courts.  *See e.g. Wind,* 133 Fed. App'x at 692 n.5 (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).[9]  By my consideration, these scores reflect little more than a limited, subjective snapshot of a person's mental state at a particular time and do not speak to particular functional limitations or the mental health of the person over time.  Here, for example, Dr. Gimeno scored Plaintiff at GAF 40 as of the date of his letter but the doctor noted further that he estimated that Plaintiff had been at 65 over the past eighteen months.  A score of 65 would suggest only mild limitations.  This suggests to me that a snapshot score of 40 is actually of little value in assessing disability on these claims.  In any event, the ALJ here explained that he gave the GAF 40 little weight for the reasons employed by the Commissioner in declining to endorse the GAF scale for use in the disability program and because the score was here given by Dr. Gimeno whose opinion he had already discounted for a number of reasons.  Even assuming the ALJ must address stand-alone GAF scores as medical opinions when the Commissioner has rejected the validity of the GAF scale in deciding disability claims, the

---

[9]It is worth noting that the American Psychiatric Association did not include the GAF scale in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM).  *See* DSM-5 at 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

ALJ has here adequately stated good cause for rejecting the score as an indication that Plaintiff could not work.

By his third claim, Plaintiff urges the ALJ employed an incomplete hypothet (sic) with the VE. Here, Plaintiff begins by urging inconsistent findings by the ALJ who found Plaintiff could concentrate for two hours at a time and then take a ten minute break but who also found he had "moderate" impairment in concentration. Plaintiff interprets the first finding as meaning that for only thirty minutes out of an eight hour day he would not be able to concentrate. Whereas the finding of a moderate impairment should be defined as somewhere between occasional and frequent as such terms are used and he suggests the term approximates a fifty percent limitation over a day's work. He urges that the ALJ should have used this moderate limitation in concentration in his hypothetical question to the VE because, with such limitation, Plaintiff could not work. Secondly, he argues that the hypothetical did not include a limitation for his severe IBS. Finally, he urges that the ALJ did not define the time period under consideration for the VE. Here, the relevant time period was between May 29, 2009 (the alleged onset date) and December 31, 2009 (Plaintiff's date last insured). Accordingly, he urges the case should be remanded so the ALJ could indicate whether the jobs he identified would have been available during the relevant period. (Doc. 13 at 8-10).

The Commissioner argues that Plaintiff offers no authority for his definition of moderate limitations as being between one-third and two-thirds of the day. As for the ALJ's hypothetical question to the VE, it accounted for Plaintiff's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, repetitive tasks, and by limiting him to concentration for two hours after which he requires a ten minute break. The

Commissioner asserts that together these limitations satisfy the dictates in *Winschel*. This limitation is further supported by the opinion from consulting examiner, Dr. Appenfeldt, who opined Plaintiff's concentration was within normal limits and the opinion of Dr. Dinwoodie who found Plaintiff's concentration sufficient to complete tasks. As for the failure to address limitations from IBS, Plaintiff fails to identify any record evidence of treatment or limitations for the condition and the ALJ is not required to include a functional limitation not supported by the record. Nor was the ALJ required to inquire whether the jobs identified by the VE were available between the alleged onset date and the date last insured. Plaintiff, through his present counsel, could have inquired about such with the VE but did not and he offers no evidence on appeal that the jobs identified by the VE were unavailable. (Doc. 15 at 18-22).

I find this claim as well without merit. On the first point, the Plaintiff's effort at manufacturing inconsistency fails. His argument that a moderate limitation in the context here used translates to a functional limitation fifty percent of the time is wholly unsupported by any authority and the argument simply misconstrues the ALJ's rationale in this case. Here, the decision reflects that in assessing the severity of Plaintiff's mental condition, the ALJ found moderate difficulties in concentration, persistence, or pace. (R. 24). In explanation, the ALJ noted that the consultative examiner stated that Plaintiff was able to sustain his concentration and persistence and that testing indicated Plaintiff's memory was intact. (*Id.*) Further, the ALJ noted this assessment was not an RFC assessment. (*Id.*) In his mental RFC assessment, based on all of the evidence, the ALJ found Plaintiff's mental condition allowed him to perform simple, routine, and repetitive tasks and to maintain attention and concentration for two hours but he would then need a ten minute break. (R. 24, 28). Such

limitations were employed in the hypothetical to the VE who opined that even with such

limitations Plaintiff could perform a number of jobs in the national economy. (R. 58-59). I

find no error in this at all. Apart from his unsupported theory and calculations, Plaintiff fails

to offer any medical or other support for the claim that this limitation employed with the VE

did not adequately and correctly assess his capacity for attention and concentration.

As for the purported failure of the ALJ to address limitations from IBS with the VE,

Plaintiff fails to identify any record evidence of treatment for the condition nor limitations

arising from the condition that should have been included in the hypothetical question to the

VE. Here, the decision reflects that the ALJ credited Plaintiff with severe IBS but noted that

the record did not reveal that he had sought treatment for the condition. (R. 23, 26). By the

ALJ's review, the condition was seldom mentioned by the Plaintiff in his treatment records

for other impairments and, in the absence of his seeking treatment for the condition, the ALJ

declined to infer greater limitations than already imposed. (R. 26). Plaintiff fails to explain

how this rationale was improper or show that it incorrectly assessed the medical evidence.

Significantly, he fails to identify additional functional limitations arising from this condition

that should have been employed with the VE.[10]

As for the alleged failure of the ALJ to get the VE to state that the jobs he found

available existed during the limited period at issue on this claim, I find no error. Here, absent

a showing that the ALJ was confused about the period under review or that the RFC assessed

---

[10]It is worth observing that Plaintiff's present counsel also represented him at the
hearing. As the transcript reflects, counsel was afforded a full and fair opportunity to develop
the record on behalf of his client. He declined to do so in any way supportive of this third
claim.

by the ALJ for the period under review was incomplete, there is simply no error in the failure

of the VE (or Plaintiff's counsel) to specifically inquire if such jobs identified by the VE

under that RFC were available during the period under review.  Plaintiff can make no

showing on this record that the VE was unaware of or confused about the limited period

under review such that his testimony would not support the vocational decision and it is

simply silly to suggest that the ALJ's questions to the VE were directed to any period other

than that which he was considering.

By the fourth claim, Plaintiff complains that the ALJ's RFC assessment makes no

mention of SSR 96-8p.  Under that ruling, in order to deny benefits on a finding the claimant

can work, the ALJ must find the claimant can work on a sustained basis, eight hours a day,

five days a week.  Here, based on Drs Gimeno, Tolli, and Samlaska's reports, Plaintiff

contends it is "incomprehensible" that he could work on a sustained basis during the relevant

period.  (Doc. 13 at 10).

In response, the Commissioner urges the argument is without merit as the decision

that Plaintiff could perform full time work is supported by substantial evidence.  By this

record, findings and opinions by Dr. Tolli in 2002 and 2004 are not relevant to the 2009 time

period under consideration.  As for Dr. Tolli's findings in March 2009, made just before the

alleged onset date, the doctor found Plaintiff had normal strength in all extremities and finger

flexion was normal.  The doctor recommended pain management with epidural injections and

indicated that he could return to light duty work with a lifting limitation of five pounds.  The

lifting limitation expired on March 10, 2009.  An MRI in March 2009 showed only moderate

disc herniation and diffuse bulging.  An x-ray of the cervical spine showed only disc space

22

narrowing.  Pain management was provided by Dr. Samlaska between April and December

2009.  She prescribed medications, epidural injections and physical therapy for the right arm

condition.  Plaintiff reported improvement and that he was stable.  There is no evidence of

treatment for IBS.  And, reviewing doctor, Jesse Palmer, opined Plaintiff could perform light

exertional work.  Similarly, the Commissioner argues that mental health records do not

establish disabling limitations either.  There are no significant mental health treatment notes

in the record, relevant to the time period under review, apart form the October 2009 letter by

Dr. Gimeno.  The letter provides little to no information concerning the condition during this

relevant period apart from the conclusory statement that Plaintiff was disabled.  Upon her

examination, Dr. Appenfeldt made generally positive findings and she identified no

limitations that would interfere with Plaintiff performing fulltime work.  Likewise, both State

agency, reviewing doctors opined that Plaintiff did not suffer mental limitations preventing all

work.  In short, nothing in the record revealed Plaintiff was disabled between May 23, 2009

and December 31, 2009.  Thus, the Commissioner argues the claim should be denied.  (Doc.

15 at 7-13).

The undersigned finds Plaintiff's fourth claim also without merit.  First, Plaintiff is

incorrect that the ALJ did not recognize SSR 96-8p in connection with the RFC

determination.  As the decision reflects, the ALJ stated, "[a]n individual's residual functional

capacity is his ability to do physical and mental work on a sustained basis despite limitations

from his impairments.  In making this finding the undersigned must consider all the

claimant's impairments, including impairments that are not severe. (20 C.F.R. 404.1520(e)

and 404.1545; SSR 96-8p)."  (R. 21).  Moreover, this statement reflects the ALJ's

understanding that a claimant's RFC reflected his ability to perform work on a sustained

basis.  And, for the reasons set forth above, it is not at all "incomprehensible" that the ALJ

concluded that Plaintiff could perform a limited range of light work on a sustained basis.  As

the Commissioner demonstrates, apart from the conclusory opinion of Dr. Gimeno, the

medical and mental health evidence does not support the claim for disabling limitations.

More to the point of this claim, the record provides adequate support for the RFC assessment

and the conclusion that Plaintiff could perform sustained work.

Finally, Plaintiff urges that the reasons provided by the ALJ for discounting his

credibility and that of his mother were improper and unpersuasive under the Eleventh Circuit

"pain standard."  Thus, in a rambling critique, Plaintiff urges that the ALJ: improperly

discounted his credibility based on matters occurring outside the limited period under

consideration; the ALJ failed to mention Dr. Samlaska; failed also to mention Dr. Corso or

any medical record after December 2009; mentioned the fact that Plaintiff did not work for

several years prior to the pertinent period; and the fact that he received unemployment

benefits in 2010; and relied on Plaintiff's daily activities of short duration.  Moreover, the

ALJ substituted his opinion for that of the doctors' concerning his right arm and hand, the five

pound lifting limitation, and the side effects of his medications and improperly refuted his

credibility by citing to the opinions of the consulting examiner and the two state agency

reviewing doctors.  Moreover, he contends the ALJ erred in discounting Plaintiff's mother's

submission on the basis that it was inconsistent with the medical record and duplicative of the

Plaintiff's testimony.  He urges a remand for an award of benefits is required.  (Doc. 13 at

15).

The Commissioner responds that the ALJ's finding that Plaintiff's subjective claims were not entirely credible is supported by adequate reasons. Thus, the symptoms were inconsistent with the treatment history which did not support disabling symptoms. The ALJ also properly cited Plaintiff's poor work history, including that he had not worked for several years prior to his alleged onset date and the fact that Plaintiff had sought unemployment benefits, thereby representing that he was willing and able to work, after his alleged onset date. Moreover, he received such benefits in 2010 just after his date last insured. Nor was it improper for the ALJ to cite Plaintiff's daily activities, which at one point involved his living on a boat that he maintained with help from his friends and in caring for his son and dog. For similar reasons, the Commissioner argues the ALJ was not required to give more weight to the opinions of Plaintiff's mother which were the same as Plaintiff's. (Doc. 15 at -22-26).

In this Circuit, subjective complaints such as pain, fatigue, or dizziness are governed by a two-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Where such showing is made, the Regulations dictate that the ALJ then evaluate the intensity and persistence of the symptoms to determine how such limit the claimants capacity for work. 20 C.F.R. §§ 404.1529(c); 416.929(c). Relevant factors in this consideration include the objective medical evidence,

evidence of factors that precipitate or aggravate the symptoms, medications and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history. *Id.* If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

Here, the ALJ applied the standard[11] and determined that Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, but not to the extent claimed by Plaintiff. (R. 25). There follows the ALJ's rationale for finding the Plaintiff less than fully credible. (R. 26-28). By a fair reading, chief among the ALJ's reasons for discounting his subjective claims was the lack of support in the medical and mental health record and related opinion evidence. Once again, Plaintiff fails to demonstrate error in such reading and by my review, the medical and mental health records alone offer adequate reason to discount Plaintiff's claims of disabling pain and other symptoms. As discussed above, apart from Dr. Gimeno's opinion, there is neither opinion evidence nor clinical findings to support a claim of disabling symptoms and impairments during the period under review. Moreover, I find no reversible error in the ALJ's consideration of the whole of the record through Plaintiff's date

_____

[11]Proper application of the regulatory standard will satisfy this circuit's pain standard. *See Wilson v. Barnhart,* 284 F.3d 1219, 1225-26 (11th Cir. 2002).

last insured; his consideration of the Plaintiff's work history; and the fact that during the period under review he was seeking unemployment benefits on representations that he was willing and able to work.  Given the numerous other considerations by the ALJ, reference to Plaintiff's daily activities was not improper either.  Nor did the ALJ err by not addressing records from Dr. Corso and his nurse practitioner in 2011 and 2012, well after the December 2009 date last insured.  And, I do not find that the ALJ substituted his opinions for those of the doctors or incorrectly stated what the medical record indicated that Plaintiff reported that his medications were helpful.

In sum, I find the ALJ followed the applicable standard and articulated explicit and adequate reasons for discounting Plaintiff's subjective claims to the extent he claimed disability from all work.

### D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I **RECOMMEND** that it be **AFFIRMED**. I further recommend that the Clerk be directed to enter judgment in favor of the Defendant and to close the file.

Respectfully submitted this
11th day of May 2015.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Virginia M. Covington, United States District Judge
Counsel of Record